**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Teleplus Consulting, Inc.,

                          Case No: 08-cv-2989 (JRT/AJB)

          Plaintiff,

vs.                          **REPORT AND RECOMMENDATION**

Joseph and Susan Sampley d/b/a
JLS Consulting,

          Defendants.

---

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) [Docket No. 13] filed July 15, 2008. The action has been referred to the Magistrate Judge for findings of fact and a recommendation for the disposition of the motion under 28 U.S.C. § 636 and Local Rule 72.1(b).

Based upon the file and records in this matter, the undersigned makes the following:

**FINDINGS OF FACT**

1. Plaintiff, Teleplus Consulting, Inc. ("Teleplus"), is corporation formed under the laws of the State of Minnesota with its principle place of business in Minnesota. See Compl. ¶ 1 [Docket No. 1].

2. Teleplus is an independent consulting firm working on behalf of large users of telecommunications services. See Pl.'s Mem. 1 [Docket No. 20].

3. Defendants, Joseph and Susan Sampley d/b/a JLS Consulting[1] (collectively "JLS"), have their principle place of business at 12725 W. Indian School, Suite C101, Avondale, Arizona 85392. See Second Sampley Aff. ¶ 3 [Docket No. 31].

4. JLS provides telecommunications services and products. See Defs.' Mem. 1 [Docket No. 11].

5. JLS does not have a Minnesota address, is not registered to conduct business in Minnesota, does not own Minnesota property, and does not have a Minnesota bank account. Id. at 2.

6. JLS does not have employees or representatives located in Minnesota and no JLS employee ever visited Minnesota in connection with the transaction between JLS and Teleplus. See Sampley Aff. ¶ 12 [Docket No. 14].

7. This lawsuit arises from a consulting agreement entered into between Teleplus and JLS that called for assistance in furthering negotiations with Apollo Group, Inc. ("Apollo"). Id. at 1.

8. Apollo Group, Inc. ("Apollo") is based in Phoenix, Arizona. See Sampley Aff. ¶ 11.

9. In or about February 2002, JLS began negotiations with Apollo in Arizona regarding a potential contract that would entitle JLS to provide all of Apollo's communications consulting services. Id.

10. Apollo indicated to JLS that one of the services that Apollo needed was to negotiate a new contract with AT&T. See Second Sampley Aff. ¶ 4.

---

[1] Defendants maintain that Plaintiff has misidentified the name of the Defendant in the pleadings. Defendants identify JLS Marketing, LLC, as an Arizona Limited Liability Company. Defendants state that Joseph and Susan Sampley do not individually do business as JLS Consulting. Defendants state instead that JLS Marketing, LLC, does business as JLS Consulting. The precise identification of the Defendant makes no difference in the Court's determination of the present motion, and the Court makes no findings with respect thereto. See Defs.' Mem. n.1 [Docket No. 13].

11. In early 2003, JLS contacted and pursued a business relationship with Teleplus in order to facilitate Apollo's negotiation of a new contract with AT&T. Id.

12. Teleplus and JLS came to an agreement whereby Teleplus would assist in the negotiations between Apollo and AT&T.[2] See Second Sampley Aff. ¶ 5.

13. Teleplus and JLS frequently communicated by e-mail and telephone concerning the representation of Apollo. See Hanson Aff. ¶ 14 [Docket No. 22]

14. Teleplus and JLS secured a contract proposal from AT&T, to which Apollo agreed. See Second Sampley Aff. ¶ 6.

15. Upon Apollo's acceptance of AT&T's contract proposal, Teleplus' role was limited to reviewing Apollo's monthly telecommunications bills. See Pl.s' Mem. 3.

## ISSUE

Can Minnesota exercise personal jurisdiction over JLS in a dispute with Teleplus regarding disputed payments for consulting services JLS and Teleplus provided Apollo?

## DISCUSSION

**I.   Standard of Review**

In a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of setting forth a prima facie case of personal jurisdiction. The Court must view all the facts alleged in the Complaint and corresponding affidavits in the light most favorable to Teleplus "and all factual conflicts must be resolved in [Teleplus'] favor." See Janel Russell Designs, Inc. v. Mendelson & Assocs. Inc., 114 F. Supp. 2d 856, 861 (D. Minn. 2000) (citing Digi-Tel Holdings, Inc. v.

---

[2] The Court's record in this matter does not contain any written documentation evidencing the agreement between JLS and Teleplus.

Proteg Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1996)). The Court may exercise jurisdiction over JLS if (1) jurisdiction is permissible under Minnesota Statute § 543.19 (Minnesota's long-arm statute); and (2) jurisdiction is compatible with the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution. See Digi-Tel Holdings, Inc., 89 F.3d at 522. Because Minnesota Statute § 543.19 extends Minnesota courts' jurisdiction over non-residents "to the maximum limit consistent with due process," the Court must only determine whether the federal due process standards are satisfied. See Wessels, Arnold & Henderson v. Nat. Med. Waste, 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process standards are satisfied where a defendant has "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In this respect, the Court should consider "whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state, and should, therefore, reasonably anticipate being haled into court there." See Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003). Courts apply a five-factor test to determine whether a non-resident defendant has met the minimum contacts requirement: (1) the quantity of the defendant's contacts with the forum state; (2) the nature and quality of the contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. Id. at 562.

## II. Discussion

### A. "Minimum Contacts" Factors

#### 1. Quantity, Quality, and Nature of Defendants' Contacts, and Relationship Between Those Contacts and the Cause of Action

In analyzing the five factors discussed in Pecoraro, the Court finds that Teleplus has not met its burden of making a prima facie case for personal jurisdiction. The first three factors discussed in Pecoraro– the quantity, nature, and quality of the defendants' contacts with the forum state, and the connection between those contacts and the cause of action – are closely related. Therefore, the Court will discuss them together. See Minnesota Mining & Mfg. v. Nipon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995).

Teleplus argues that JLS's initiation and pursuit of the business relationship with Teleplus should subject JLS to personal jurisdiction in Minnesota. Teleplus cites Wessels in support of its argument. See Pl.'s Mem. 6. The Wessels Court held that an out-of-state defendant who actively pursued a relationship with a Minnesota company for the purpose of obtaining assistance with a possible merger was subject to personal jurisdiction in Minnesota. 65 F.3d at 1430-34. However, the Wessels Court considered multiple factors in addition to the initiation and pursuit of the business relationship in determining that the defendant was subject to personal jurisdiction in Minnesota.

JLS distinguishes Wessels from the current dispute in several significant ways. See Defs.' Reply Mem. 5-6 [Docket No. 30]. The plaintiff in Wessels agreed to perform a wide range of services for the defendant, including undertaking an investigation of the defendant, advising as to the pricing, form, and structure of the merger, meeting with the defendant's board of directors, and providing other financial advisory and investment

5

services. 65 F.3d at 1430. In contrast, Teleplus and JLS contemplated a rather limited role for Teleplus, namely negotiation with AT&T. See Second Sampley Aff. ¶ 5. Additionally, the parties in Wessels contemplated an ongoing relationship,[3] while Teleplus was contacted for the sole purpose of negotiating with AT&T. See Second Sampley Aff. ¶ 5. Moreover, the dispute in Wessels was governed by a written contract. 65 F.3d at 1430. No written contract controls the dispute between JLS and Teleplus. See Defs.' Reply Mem. 5. Also, the defendants in Wessels visited Minnesota in connection with its agreement with the plaintiffs,[4] while JLS never visited Minnesota in connection with its agreement with Teleplus. See Sampley Aff. ¶ 12.

Teleplus highlights two similarities between Wessels and the current dispute: JLS's contracting with a Minnesota resident and the regular communications between Teleplus and JLS. See Pl.'s Mem. 7-8. JLS counters with case law that establishes that neither factor alone is enough to support the exercise of jurisdiction. See Defs.' Reply Mem. 5-6. JLS points to the fact that "the mere making of a contract with a non-resident is not enough to confer jurisdiction," Id. at 698 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)), and "contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." See Johnson v. Woodcock, 444 F.3d at 956 (8th Cir. 2006) (citing Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002)). The Court agrees that these factors are not sufficient to support the exercise of jurisdiction in this case. JLS's contacts with Minnesota are limited to the fact that (1) it entered into a contract with a Teleplus, a Minnesota company, for the purpose of obtaining assistance in negotiating an agreement between Apollo and AT&T, and, as a result, (2) made

---

[3] 65 F.3d at 1430
[4] See 65 F.3d at 1430.

communications with Teleplus to formalize and execute said agreement. <u>See</u> Sampley Aff. ¶ 12-14. Although these factors can and should be taken together as Teleplus suggests, the Court finds that even when viewed in totality, these factors do not weigh heavily enough to subject JLS to personal jurisdiction in Minnesota.

Teleplus argues that another factor establishing jurisdiction is that the substantive work of the contract, which benefitted JLS, was performed by Teleplus in Minnesota. <u>See</u> Pl.'s Mem. 8. JLS counters by arguing that this substantive work was limited to negotiating with AT&T and reviewing Apollo's monthly bills, and ultimately did not involve JLS. <u>See</u> Defs.' Reply Mem. 5-8. The Court finds JLS's argument persuasive. When the dispute ultimately arose, JLS's connection to Teleplus in Minnesota was limited to the exchange of invoices and compensation. <u>See</u> Defs.' Mem. 7.

### a. General and Specific Jurisdiction

The Court would also note that the third factor discussed in <u>Pecoraro</u> - the relationship between the cause of action and the contacts – distinguishes between general and specific personal jurisdiction. <u>See</u> <u>Wessels, Arnold & Henderson</u> 65 F.3d at 1432. A defendant may be haled to court if he is found to be subject either to general or specific jurisdiction in that court. General jurisdiction exists when a defendant's contacts with the state are of such a continuous and systematic nature that the defendant can be sued in the forum state over any controversy. <u>See</u> <u>Digi-Tel Holdings, Inc.</u>, 89 F.3d at 523 n. 4. "General jurisdiction refers to the power of a state to adjudicate any cause of action regardless of where the cause of action arose." <u>See</u> <u>Wessels</u>, 65 F.3d at 1432. "Specific jurisdiction can only be found if the controversy is related to or arises out of the defendant's contacts with the forum state." <u>See</u> <u>Johnson</u>, 444 F.3d 953, 956. "Specific

jurisdiction is jurisdiction over causes of actions arising from or related to the defendant's actions in the forum state." See Wessels, 65 F.3d at 1432.

This Court finds that JLS does not have the requisite continuous and systematic contacts with Minnesota such that it should be subject to general jurisdiction in Minnesota. The only contacts in this action are specifically related to the limited business relationship between JLS and Teleplus. There is no evidence that JLS had any connection to Minnesota prior to or upon the expiration of the agreement with Teleplus, other than sending Teleplus their portion of the monthly Apollo commission.

Neither does this Court find that JLS should be subject to specific jurisdiction in Minnesota. Although the dispute arises over JLS's contacts with Teleplus, a company doing business in Minnesota, the contacts are not sufficient to subject JLS to jurisdiction in Minnesota. As discussed above, the quantity, nature, quality, of JLS's contacts do not satisfy the requisite minimum contacts with Minnesota.

### 2. Minnesota's Interest in Litigating this Matter and Convenience of the Parties

Teleplus argues that Minnesota has a strong interest in litigating this claim, referring to the fourth factor cited in Pecoraro in support or its argument. See Pl.'s Mem. 10. Teleplus states that Minnesota has a strong interest in providing a forum for its residents to litigate claims against non-residents. Id. JLS counters by arguing that "Minnesota's interest in providing its residents with a forum cannot make up for the absence of minimum contacts." See Digi-Tel Holdings, Inc., 89 F.3d at 525. As discussed above, JLS does not have the minimum contacts with Minnesota such that it should be subject to jurisdiction in Minnesota. The interest Minnesota has in providing Teleplus a forum cannot make up for JLS's lack of minimum contacts.

In addition, Arizona is likely the proper venue in which adjudication of this claim should take place. Although this Court finds that the resulting inconvenience to either party in litigating this matter away from its chosen venue is not a factor that weighs heavily in the Court's decision, it should be noted that litigating this matter in Arizona may inconvenience the parties slightly less than litigating this matter in Minnesota. The material information in this case will be found in Arizona. The alleged wrongdoing occurred in Arizona, involved a third-party Arizona company, and almost all relevant witnesses and documents will be found in Arizona.

## CONCLUSIONS OF LAW

JLS does not possess the necessary minimum contacts with Minnesota such that it should be subject to jurisdiction in this forum.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 13] be **GRANTED**.


Dated:__October 29, 2008____             __s/ Arthur J. Boylan_____
                                         Arthur J. Boylan
                                         United States Magistrate Judge


    Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **November 12, 2008**.